## JOSEPH McGRATH v. CUNNINGHAM MERCANTILE COMPANY.[1]

June 12, 1925.

No. 24,532.

**Finding sustained that inferior pulpwood was sold as sound.**

1. Record examined and *held* that the evidence justifies the findings that the wood was sold as pulpwood, that it was impaired in quality by rot and worm holes to the extent of 30 per cent of its value, and that it was sold as sound.

**Measure of damages when such wood is not sound as warranted.**

2. In sale of pulpwood warranted to be sound, when it is impaired in quality by rot and worm holes to the extent of 30 per cent of its value, the measure of the purchaser's damage is the difference between the market value of the pulpwood if it had answered to the warranty and its market value as it actually was.

1. See Sales, 35 Cyc. p. 465.
2. See Sales, 35 Cyc. p. 468.

Action in the district court for Pine county for breach of contract. The case was tried before Searles, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Affirmed.

*Hurley & Hurley*, for appellant.

*McClearn & Gilbertson*, for respondent.

WILSON, C. J.

Plaintiff paid defendant $655 for 126 cords of pulpwood warranted good and sound. He then sold it to the Northwest Paper

[1]Reported in 204 N. W. 322.

Company for $756, to whom defendant shipped it pursuant to instructions from plaintiff. Upon delivery it was found that it was impaired in quality by rot and worm holes to the extent of 30 per cent of its value. Because of such condition the paper company refused to accept the wood. In a compromise settlement it paid plaintiff $568, resulting in a loss to plaintiff which he seeks to recover in this action. The court found for plaintiff. Defendant has appealed from an order denying its motion for judgment or a new trial.

The evidence justifies the finding that:

(1) The wood was sold as pulpwood; (2) it was impaired in quality by rot and worm holes to the extent of 30 per cent of its value; (3) it was sold as good and sound.

Plaintiff's damage was the difference between the market value of the pulpwood if it had answered to the warranty and its market value as it actually was. Dun. Dig. § 8624; G. S. 1923, § 8443, subd. (7); Miamisburg T. & C. Co. v. Wohlhuter, 71 Minn. 484, 174 N. W. 175. It is claimed that the evidence is silent as to the market value in its actual condition. The evidence shows that if it had been as warranted it would have been of the value of from $6 to $6.50 per cord. The trial court could have accepted these figures. He apparently acted on the theory that such market value was what plaintiff paid, namely, $5 per cord for 76 cords and $5.50 per cord for 50 cords. The evidence shows that its quality was impaired to the extent of 30 per cent, as found by the court, which we think sufficient to show the market value as it actually was. This would result in a shortage or loss of $196.50 which was the original amount found by the trial court. On motion for a new trial this amount was reduced to $188 apparently because that was the amount demanded in the complaint. The mere fact that such amount was the difference between what plaintiff received on his compromise settlement and what he would have received on his sale if the pulpwood had been sound, does not mean that the court attempted to award damages on the theory of loss of bargain or any other erroneous theory. In fact the finding, as actually made, was well within the range of the evidence and might have been larger had the court

accepted the testimony as to market value instead of the purchase price, 24 R. C. L. 255, § 534, but, as to this, the defendant being the beneficiary thereof cannot complain.

Affirmed.